Good afternoon, Illinois Appellate Court First District Court is now in session, the Sixth Division, the Honorable Justice Sharon O. Johnson presiding, case number 22-1729, the Village of Arlington Heights versus the City of Rolling Meadows. Thank you very much. Welcome. I'm Justice Sharon O. Johnson, and I'm joined by my colleagues, Justice Michael Hyman and Justice Carl Walker. You will each be given 20 minutes in which to present your case with the appellants. Having the opportunity to reserve five minutes for rebuttal. Please state your names and appearances for the record, beginning with the appellant. Thank you, Your Honor. Good morning. Kurt Passman on behalf of the appellant, the Village of Arlington Heights. Good afternoon. My name is Andrew Acker, A-C-K-E-R. And I apologize my Zoom link has my case from earlier today's City of St. Charles. I also represent them. But for this matter, I represent the City of Rolling Meadows. I apologize for the misnomer. No problem. Attorney Passman, would you like to reserve time for rebuttal? Yes, Your Honor. I would like to reserve a full five minutes. Okay, very well. Thank you. You may begin. Thank you very much. Again, good afternoon, Your Honors. May it please the Court, Kurt Passman on behalf of the appellant, the Village of Arlington Heights. We're here today because Rolling Meadows refuses to return nearly $1.2 million in money. Well, we know the facts. We've read the briefs and looked at the cases. So Rolling Meadows relies principally on one case, City of Chicago versus Kankakee. And what is the one case that you believe is determinative of this case? Your Honor, you're right. That is what they rely on. There isn't a case directly on point, but I would say the closest one we have would be Mark Winston-Illinois Racing Board. It refers to the inherent equitable jurisdiction of the court for justice and fairness and equitable results in all matters under Illinois law. That case confirms that principle of our jurisprudence. And I think it's notable not only for that statement, but also its review of a prior case, the ART versus ARDT, which is Illinois Department of Professional Regulation decision that the Supreme Court handed down in 1992. In ART, and this is as relayed by Marsh, it's notable, I think most because there was a specific provision of statutes, the Dental Practice Act, that prohibited certain types of judicial intervention. And the court in ART, as confirmed by Marsh said, the legislature can't take away our equitable jurisdiction. The courts always have an inherent jurisdiction. The legislature can take it away. The Supreme Court has said that they can do it either with the language, that it takes care of that area, or it could do by looking at the whole of the statute. Correct? That's correct, Ron. Okay, so let's break that down. So you would agree the legislature hasn't said in this case that the administrative agency has exclusive jurisdiction, right? There is no explicit statute that affects that. Nothing says that. So that leaves us with looking at the whole. So let's talk about our statutes here. Looking at the whole, what is your argument? Your Honor, the legislature stated in Chicago v. Kankakee that, I'm sorry, the court stated, forgive me, the court stated in Chicago v. Kankakee that the legislature had, by looking at the whole, vested exclusive jurisdiction in the Department of Revenue regarding the levy, collection, and remittance of taxes. I would submit to you this case is not about that. This case is not about the levy, collection, and remittance of taxes. This case is about checks being sent to the wrong place. There is no dispute. There is no debate. There is no concern about how the Cooper's Hawk restaurant levied taxes and collected it, what it did by way of filing the Department of Revenue, or anything related to that. The only issue is that, by mistake, the checks were sent to Rolling Meadows, not to Arlington Heights. So we're not... Wait, wait, wait, wait, wait. It went to the Illinois Department of Revenue, and they gave you six months, right? They can go back six months. Okay. That's what it says. Well, now, why are you saying that that's the end of the road? That's the end of the road. It goes on. Why should it go on? It goes on for several reasons. First, the six-month true operator, as we call the six-month reimbursement, that statute does not state that that is the sum of the remedies available to an aggrieved rightful recipient, as my client is. In fact, it's attached to the complaint, and in the record, in their letters to the two municipalities here, the Department of Revenue stated that if there was more to be worked out, they could do so by agreement. That's one of the issues, though, because you're using the letter to show that the Department says that you all need to work this out, and that it should be worked out. They're using the letter to say that the only way it can be worked out is that you all have to work it out, and that there can't be any further legal action. That is what the city has said, Your Honor. You're right. I think that's reading too much into it. It would make no sense for the department to say, well, you can work it out, but you have no means of enforcing that. But more importantly, because we started with Justice Hyman's questions about what the statutes involve, include a requirement that the Department of Revenue send periodic reports to municipalities stating various businesses in town, and a requirement that municipalities validate those reports or make corrections. If counsel for Rolling Meadows is correct, if there's nothing anyone can do beyond a six-month queue up, of what purpose is that certification process? A municipality like Rolling Meadows, if they identify the error, and I should note, as I said before the circuit court, there's nothing in the record suggesting anything nefarious was done. I don't mean to suggest that at all today. But whenever they spot it, if they make the corrections, it's a six-month remedy. If they don't spot it, it's a six-month remedy. There is no, not only is there no purpose of the certification, but in fact, we incentivize municipalities to engage in gamesmanship. We incentivize them to not certify that. Are you suggesting that that letter was not sent to the village of Arlington Heights as well? It was in the record, Your Honor. It was sent, and identical or nearly identical. If it's the village of Arlington Heights, then responsible, why didn't they notice the error? Hey, we're missing $1.2 million. Your Honor, the record does not indicate why either community did not correct the reports issued at various points during the nine years in question. We believe that's a mistake that was made during discovery, and that it's appropriate for the court to do so. So why is Bowling Meadows then more responsible than Arlington Heights for the error? Well, in this case, they're more responsible because they're holding money that doesn't belong to them, and they can see that it doesn't belong to them. And moreover, Your Honor, as a matter of practicality, and again, this is now, this is, I think, practical argument. It's common sense. In my opinion, it's not in the record. You get a list of businesses in your jurisdiction, and that is that the exhibit A of the complaint explains from the Department of Revenue's perspective how it works. You get a list of businesses, it's going to list everything there. Presumably, somewhere it would have said Cooper Talks. So Bowling Meadows could have seen it listed, and I would hope someone would say, that's not in our town. To reverse the Trooper Arlington Heights, they'd have to go looking for what's not there. And yes, would it have been better if they found it? Of course. But these are big communities with hundreds of We're talking about a situation here where you both had an opportunity to notice this problem some time ago. Is that correct? City and the village both had had an opportunity to catch this error. Presumably, that's correct. Let me jump in here. I'm just going to admonish Attorney Acker not to shake your head, make other movements, and we can make your argument when it's your turn. Okay, thank you. Your Honor, I think that's a good question of facts for the trial court to determine whether there were issues and explanations as to what each community saw and when, what they did with that, to identify whether that has an impact on what people do. Why is that relevant? Why is it relevant in a case? Just tell me, when you go, if you go to circuit court, is it relevant whose fault it is or why it happened? Your Honor, I don't think it's relevant. I think they should return all of the money. But you're arguing it's relevant. I mean, you're telling me it's relevant. And in fact, in the briefs, it talks about it. So, I mean, what's, is this a job then for the administrative agency to look into to see whose fault it is? Is that what you're saying? No, Your Honor, this is a case of the check going to the wrong place. And if it's relevant to the trial court, we can investigate it there. My point is- But why is it relevant? If it's relevant, maybe the administrative agency is better equipped. Well, it's relevant because of the argument that Roe v. Meadows put forth in the motion to dismiss. It's one that the trial court declined to grant dismissal on. That's a statute of limitations. We raised in our response to that statute of limitations argument that there are exceptions to the statute for fraud and other facts that relate to ability to identify the issue. It should be something perhaps that gets to their argument there. For you today, it's about whether you have the authority to work in equitable results or whether Roe v. Meadows can say that no one can force them to give away money that they themselves must concede never should have been in their hands in the first place. Right. But let's kind of move beyond that. Let's go back to what the bigger issue is. The bigger issue is that we need you to help us get around the city of Chicago versus the city of Kankakee. Because the primary argument that Mr. Acker is going to be making in just a moment is that simply there was no jurisdiction. Right. Your Honor, there's three reasons why the Kankakee case is not controlled here. First is that this is not a case in which we are disputing or need to resolve the process of levying, collection, or remittance of taxes. As I said, this is about this money being sent to the wrong place. If this were any other context, if there were a bank sending a customer a check to the wrong person, we wouldn't be having this conversation. It's a very simple case. It's conversion into unjust enrichment. That's one. So we're not in that kind of context. But counsel, we might be having that conversation if we waited eight years to bring it to the bank's attention. We might be having a conversation in the context perhaps of an affirmative defense, Your Honor. But that would still be within the court's subject matter jurisdiction. And that's something we could have out before the circuit court. Back to why Kankakee does not control Justice Walker and for the court. Number two, in Kankakee, it's important not to read that one sentence that they're going to rely on in a vacuum. As we read the whole case, the Supreme Court goes through lengths to explain why the situation at issue in that case was so complicated, why it was not just mere arithmetic as Chicago and Silky advanced, but involved looking at thousands of transactions over a 14-year period, trying to figure out what kind of tax should have been applied because the use tax and sales tax were different. It was a very complicated set of transactions. We have no such complications here. This is not the kind of matter that requires a decision. They're arguing, though, that the fact that this was something that courts do all the time, maybe even the review of a contract, that's not the relevant issue here. The relevant issue is within the jurisdiction of the Illinois Department of Revenue. Your Honor, to close with the last part, the legislature has not explicitly stated that. The legislature did not explicitly say that these matters are the exclusive jurisdiction. There's nothing explicit. All of these are issues in the city of Chicago versus the city of Kankakee, though. The Supreme Court says that the legislature doesn't have to specifically say it. That's correct. I just wanted to pick up, they don't say it explicitly. Oh, yeah. Oh, I know. I'm very well aware that they don't say it explicitly, but then the Supreme Court goes on to say in that case that, well, the legislature doesn't have to specifically say it. That is what they think. Kankakee, Your Honor, again, I would submit this case is not, we're not disputing a sales tax system. Because the problem that we have is even if we, and I know you made it clear in your brief that you're not asking us to disagree with the Supreme Court, which we have no right to do, but we kind of, at least I'll speak for myself, I struggle with the absurdity of this. I do. But I need you to help me get there from a legal standpoint such that we can rule properly. Your Honor, I appreciate that you used the word absurdity. My third point, why Kankakee doesn't control here is because there is another principle of law that I know the court knows well. And that is we presume that the legislature did not intend that a statute be interpreted in a way that yields absurd, inconvenient, or unjust results. To rule for Rogel Meadows is unjust. It's not their money. They know it's not their money. The city nowhere in the brief claims it's their money. Their defense is that there's this one sentence in one case that was a very different set of facts. And then they argue they had a right to rely on that page, as though Kankakee gives them the right to put their thumb in the eye of Arlington Heights and frankly in the court and say, we have money that doesn't belong to us. And there's nothing anyone can do about it. It's a finders keepers defense and that works on the playground, but that's not the way our laws are supposed to work. And I believe it's absurd to include that whatever we make of the Illinois statutes on sales tax collection and remittance, that this is a result that they can keep this money because a mistake was made again. So there's no dispute. You just said that the money went to the city. Correct. Correct. Correct. For about a nine year period. Number two. Okay. Went for nine years. Number three, the amount of the money, is there any dispute on the amount? Your Honor, for purposes of the motion to dismiss, I believe it's accepted as true. We allege it's about 1.17 million. Okay. So for purposes of the motion to dismiss, that is not in dispute. So what I'm trying to get at is if we did send it, I mean, tell us, what would, I know this is more for the other side, but I want to hear from you first, because they're going to answer this. What would an administrative agency do? What would, I would have loved an administrative agency would have told the city, whoops, give the money back. I don't think they have jurisdiction to do that. That's what courts are for. This is unjust enrichment and this is conversion. And is that the reason because they don't have jurisdiction because the legislature didn't give them jurisdiction? The jurisdiction is given to the courts? There's nothing explicit, Your Honor. I know counsel will get into this. There is a provision that states that when a misallocation is discovered that IDOR can screw up for up to six months. There isn't anything that says that's it. And again, as I stated a few minutes ago, I think it would be absurd. It renders useless the whole certification process. It encourages gamesmanship. It encourages lying. And again, I'm not accusing Rolling Meadows of doing that in this case. I don't know what happened at City Hall. And I don't have the answers on the record of what happened at Village Hall. But that just can't be the result that a municipality that gets the money by mistake can now sit on their hands. And the moment you get past six months, six months in a day, it's now free money for them that was never theirs in the first place. But how can we add to the statute? You're asking us to add some language to the that, you know, six months and that's it. But it doesn't give us an alternative either. Your Honor, we don't need a statutory provision for the right to bring this case. Again, we've asked there's three counts of the complaint. There's declaratory judgment, unjust enrichment and conversion. Those aren't based with the exception of the declaratory judgment provision of the Code of Civil Procedure. These are these are remedies at law or inequity. And so we don't need a statute to grant us the authority to bring this lawsuit. Again, we're not filing a lawsuit concerning the sales tax levy process. I believe this case is outside the scope of Kankakee. This is simply a case in which money is being held by one party. It doesn't belong to them. The rightful owner is asking for it back. And the City of Rolling Meadows as a party holding money is thumbing its nose and saying no one can make us give this back to you. And you can't even discuss the context of why we have it or what should be done or if there they say for this court. We disagree with that. We think that fundamentally strikes against the actual jurisdiction of this court. We're talking about jurisdiction. Why don't you discuss what your position is on the City of Itasca case? City of Itasca, it's a somewhat helpful case, Your Honor. I think it shows that courts do adjudicate sales tax disputes. Now that case predates Kankakee. They recognize that if Kankakee forecloses, courts being involved in sales tax disputes, which again I don't agree with, but if it does... But the Supreme Court didn't overrule Itasca. They did not overrule Itasca. The Supreme Court said nothing about whether... Well, they just distinguished it. Do you agree that they simply distinguished it? They distinguished it in the sense of the law on which Itasca relied, talking about how you decide whether the legislature has... Well, Itasca relied on a prior case in which the court said the divestiture of jurisdiction has to be explicit. Itasca said that based on the skilling case, and the J&J Gaming case came after that. Kankakee goes through that history at paragraph 27. I think the other reason why Itasca is not really relevant is that that was a case where they were disputing where the business in question was, or more importantly, where the sales were taking place. That's the issue in Itasca. We don't have that issue here either. We know that Cooper Talks was in Eichen Heights. Rolling Meadows does not and cannot dispute that. There are situations where you've got businesses and you don't know where the sale happens. You've got situations where you don't know what kind of tax it is. That's what Kankakee case is about. Ours is nothing like that. Ours is about money that was sent to the wrong place. It's unfortunate that it was sent to the wrong place for Eichen Heights' sake, but that doesn't give the city of Rolling Meadows the opportunity to simply take the money and turn it back on all of us and on fair dealing and equity. Because in Kankakee, the money was actually sent to the right place based upon the information that the Illinois Department of Revenue had before it. It's just that there was some misconduct perhaps done there. Whereas you're claiming here there's no misconduct here. The money was just simply sent to the wrong place and that was, we don't know whose mistake that was. It seems like to me that it was probably the Illinois Department of Revenue had miscoded something. That's kind of what I took from all the totality of what I've read. And that apparently neither the village of Arlington Heights nor the city of Rolling Meadows was able to catch this error. That's- Your Honor, that's correct. And in Kankakee, presumably in that case, because it was coded as sales taxes, it was properly paid in that case to Kankakee and Channahan and then the county and state and not distributed under the much more complex use tax formula. That complication, how to undo the many transactions that were apparently at issue and then to redistribute the money is part of why the court in Kankakee said, this is not for courts to do. This is very technical. This is hard math, not mere arithmetic. This doesn't belong to us. We have to go talk to revenue. All right. Your time has expired. Attorney Acker. Yes. Thank you, Your Honor. And thank you so much for having us this afternoon. Very interesting questions. And I would like to, you know, if you have questions for me, I'll just start answering or if you want me to get into arguing. Let me ask a question because I assume a case we've all been talking about, city of Chicago versus Kankakee. That's your key case. Am I correct? It is. That's correct, Your Honor. Okay. So what was the issue that the court decided in that case? The issue that was decided, Your Honor, I believe at its core was whether or not the circuit court had jurisdiction, subject matter jurisdiction to adjudicate claims that were included declaratory judgment and unjust enrichment. Those were the claims that were being sought to be amended in the fourth amended complaint that the plaintiffs were trying to bring forward. And the court, yes, that's a very general response. What was the issue? I mean, a lot of cases that have declaratory judgments and so forth. Yes. The issue, Your Honor, involved a analysis of the statutory structure of the Department of specific statutes that were dealt with. One was the Finance Act, the Municipal Code, as well as the Department of Revenue Law. Those three statutes have very specific provisions as to what happens in the event that you have a misallocation of tax revenues that were received by the state of Illinois and dispersed. Okay. So in this case, we don't have all three, do we? I would suggest that all three sections are relevant to reach the conclusion. At least they were for the court in the city of Kankakee. Well, because of course they were for the city of Kankakee. You just told us why. Because of the nature of the case, of course, then those brought it in. But that doesn't mean that this case has all those three statutes. What statutes are really relevant here? I would submit, Your Honor, it's section 16. Let me see. Let me get this. It is section 65 ILCS 5-8-11-16. 16. That's the one. And that one specifically provides that the department shall increase or decrease such amount by an amount necessary to offset any misallocation of previous disbursements. Offset amount shall be erroneously distributed within the previous six months. It's only six months, right? That's correct. And this case is nothing about those six months. This case is outside of those six months, right? Well, that's what they're trying to get to, Your Honor. I think it's the same thing. Let's work with me. My question was answered. Go ahead. They're not asking for those six months. So there's no the department, is there? They received their statutory remedy, Your Honor. It's from the department. But there's nothing in there. And I read it. And I read every shell. And there's nothing to say that this type of case is prohibited. But let me go back. I asked, the first question I asked you is, what was the case, City of Chicago, about? Now, let me read to you what the Supreme Court says the case is about. And then give me your reaction. Certainly. This is paragraph 21. The question in this appeal concerns whether the circuit court can assess the propriety of the challenge pre-Hartney transactions, or if that responsibility falls under the exclusive authority of IDOR. Pre-Hartney transactions, not involved here, right? So that case was very specific with regard to the rebate situation. Yes or no? I would say yes. I would say yes, Your Honor. I appreciate that. I mean, you're right. So that was what the case is about. Then let's go to the end of the case. And paragraph 39. Let's look at their finding. And then I'd like you to explain why, after I read you the finding, we should follow this case. So, so far, the question that was presented by the court doesn't seem to have anything to do with the question before us. But then in paragraph 39, is the preeminent paragraph. And it says, based upon the statutory framework above, which you discussed, that all these statutes interspersed. We find that IDOR has been vested, and these are the most important words, for purposes of plaintiff's claims, with the exclusive authority to audit the reported transactions that plaintiff dispute and to distribute or redistribute the tax revenue due to any error. So the purposes of plaintiff's claims, these claims we've already discussed, are not the same claims in the city of Chicago. So how, then, does this have anything to do with our case? I submit it does, Your Honor, because the conclusion of this case has a specific discussion as to the limited instances when one municipality may maintain a cause of action against another on the rebate, on the rebate. They weren't discussing, in fact, they even go out of their way to say, is vested, which is what you're saying, that's right, for purposes of plaintiff's claims. This case, you want to read this case broadly, am I right? And they want to read it narrowly. I mean, that's absolutely, that's correct. And I think this case comes down to how we read it, whether it broadly or narrowly. And that's, that's a problem we have to decide. And so from you, and I want to give you a chance to speak, why should we read it broadly, considering what the court says? Your Honor, I would submit that there are no other reported decisions involving this issue. And I believe there's a reason why. And I believe the reason why is that it's the law of this state, that Department of Revenue has exclusive jurisdiction over refund of tax monies, period. That's my position. Again, I understand that this case is the city of Kankakee case is slightly different. It is not the same issue raised. However, the analysis that the Supreme Court engages in, I believe is directly applicable to the subject matter jurisdiction at issue in this case. How could it be directly applicable when that case is, as we started off with, involves, you know, a lot of things, and it's a very complex case. Everybody says it's a complex case. This case, you're an expert in this area. Both of you are among the leading lawyers representing governments. And you know, an easy case on the facts from a complex case. This is not, you know, whether it gets complex because of the legal issues, but as a matter of fact, this is an easy case, isn't it? It could be, except you've got a significant subject matter jurisdiction issue. We're going to decide that. I understand. But the subject matter jurisdiction issue in the city of Chicago had to do with the complexity. And we have the, so that's what I'm getting at. And you kind of really acknowledged that situation by your answer. You know, that had a lot to do with all these entities and all the companies and everything else. This one business, and we basically know how much is involved. We don't know why it happened, but one municipality got a lot more money. Now, if I take yours, what you're saying is the law in Illinois, if one municipality can get away with it for six months, they could get millions of dollars that belong to another municipality, and the other municipality can't do anything about it. Is that the law that we should have? Is that going to be good for the municipalities that depend on the money? Your Honor, it's not my place to be questioning the wisdom of the legislative scheme. I acknowledge that Mr. Passman has a very strong equitable argument. Our municipalities tried to settle and resolve this case. We did. I'm not going to get into that subsequently, but I'm just telling you that this is not the thumbing of the nose. I don't think he's saying that. I think you both are very frank. I appreciate it. Yes, but the point of the matter is that, you know, Rolling Meadows is faced with a significant legal issue, and the state of the law of my understanding of what these types of cases involve, I looked very hard to find an analogous case arising out of a sales tax refund issue. The only one I saw was Itasca, and in Itasca, that case involved a rebate agreement. You know, the necessity of having a cause of action that falls within the expressly acknowledged scope allowed, which is you don't get a cause of action unless it's based upon a rebate agreement entered into after June 1, 2004. Period. It doesn't say anywhere else that any other jurisdictional claim can be brought for recovery of monies. You know, so again, Your Honor, I appreciate the severity, the potential windfall aspect of this is troubling. I'm troubled by it, you know, as a professional, and I have to acknowledge that that was a troubling aspect for my client. Having said that, we are left with a statutory scheme that has been in and appears to be working. I would suggest that the, you know, the six, getting the monthly statements is an impetus. It shows a public policy reflecting the Department of Revenue's desire to have the municipalities be diligent in reviewing this, because just as Rolling Meadows got a benefit, Arlington Heights had a burden. They lost. So it's in everyone's best interest to be the hardship to Rolling Meadows if they were ordered to return the money. Well, money has been allocated and submitted into our general revenues. So, you know, this is monies that have been spent, Your Honor, you know, this would be out of our pocket, and that would potentially take away from other programs that we are trying to fund to advance for our public, our residents. So it, you know, again, that's true in every case against it, as you know. I mean, that's no different than every single case that involves the municipalities. Yes. I'm just trying to answer. I understand, but maybe I'd like to just twist that question a little more. Is there anything different about this case than any other case? There's no insurance. But we don't consider that. So I understand. But, you know, again, so if we were to allow this, the trial court's judgment to stand, Mr. Passman has raised the issue that there would never, never be an incentive for any municipality to ever disclose that they're receiving money that they shouldn't be receiving and could receive it for years and years and then only have to worry about the last six months being reimbursed. How do you respond to that? You kind of responded to it a minute ago that you believe. Yeah, and it's a fair question, Your Honor. All I can tell you is that if somebody is doing that, then that doesn't feel right. And I do not believe that that was what was occurring in this case. I acknowledge that that is a shortcoming of the statutory scheme. I think it's designed avoid controversy. It's designed to have an efficient mechanism of providing a remedy that everybody knows what it is. You go back six months and you move on. Obviously, I can tell you that that Rolling Meadows is going to be very diligent now in pursuing the review of these documents in the future. I'm assuming Arlene Heitz is as well. So will Arlene Heitz. But I have another question I want to ask you too, because you said something earlier when you were having dialogue with the Chicago versus Kankakee case made it clear that the Illinois Department of Revenue has exclusive jurisdiction over refunds. And I'm not sure that that's what the case held. I see a distinction there. I think what the case held was that the Illinois Department of Revenue had distribution of tax dollars. And that's not quite the same as a refund. You said refund. Yeah. And I appreciate the correction, Your Honor. I do think there is a difference. The topic, however, is the statutory line, which I believe uses the reimbursement. So it's not really a there, because it's not exactly a reimbursement either. Because here, in this case, we were talking about use taxes. And use taxes don't necessarily involve a reimbursement. Use taxes is really more of a distribution throughout the state based upon population. I mean, there's some part of it that's related to, for example, City of Chicago, I believe, gets 20%. Yeah. Then the other cities get a portion based upon their population, right? Yes, sir. Okay. So we're talking about, and that's the complicated formula that we were dealing with in Chicago versus Kankakee. And I know that you've made it clear in your brief that that has nothing to do with jurisdiction. But we're talking here about not a distribution as what you would have in a use tax situation. Because again, that's not a reimbursement, that's a distribution. Because you get money even though you've had nothing to do with those tax dollars, right? That's correct. Okay. And so here, we're talking about a refund. So I'm not even sure that we're dealing with the same issue that the Supreme Court dealt with in the City of Chicago versus Kankakee. And I'd like to give you a chance to respond. And Mr. Patterson, you got to respond as well. Yeah. I would say this, Your Honor, that the statutory mechanism for trying to make whole the six-month process is they have control over the future revenues that are going to Rolling Meadows. So they have the ability to withhold monies that Rolling Meadows should have gotten to make up the amount of that six-month look back. So there is a process that is unique unto the statute that provides a certainty that they're going to get it, and Arlington and Rolling Meadows is going to be burdened because they're not going to get what they're entitled to. So I do think that there is an equitable feature to the statute to make sure that they get paid, and that Rolling Meadows doesn't get what they shouldn't have for six months. I'm not sure if I answered your question. Go ahead, Your Honor. I'd like to ask a question that Justice Walker asked Mr. Passman, and see if you agree as well. The Village of Itasca case and the Beeler case that are discussed in paragraph 27 of the City of Chicago decision, is your understanding as well that in paragraph 27, they're distinguishing those cases from the case before them? Take a look. Yeah, my understanding is that they recognized that the Village of Itasca, their decision based on subject matter jurisdiction was based upon their finding that the legislature needed to have an express statement within the statute that they were preempted. I mean, they say neither case informs our decision. So my question was, they are saying that these cases don't apply here, and that's why it's only discussed. They don't inform them. That's correct. They don't inform them because they were decided prior to J&J Ventures. It has nothing to do with, okay. So you agree? You agree on something? I do. I'm very agreeable, Your Honor. And believe me, this is a tough case. And so I appreciate having the ability to inform you of our positions. It's been challenging, and I understand the challenge that's presented to you as passing upon this appeal. I believe my time is up. I have two additional minutes, if you'd like to take it. If not, we can... I'll ask you another question. Go ahead, Your Honor. I mean, I could ask you many questions, but I'll leave. I'll have one more here. I didn't like the question I was going to ask you. Go ahead until I find the question. Again, I want to thank you folks for taking the time to listen to us today and allow us to present our sides. This has been a very challenging case, and thank you for your consideration. Well, and I just, since you still have another, based on my clock, still another minute. Yeah, go ahead. Yeah, go ahead, Your Honor. So your argument here is that the court has no equitable powers to hear this case. Is that correct? That's my position, Your Honor. I believe that the only authority that this court has is to determine whether or not the circuit court has subject matter jurisdiction. Beyond that, and based upon our position, they don't have it. So that ends the matter. And so doesn't the Constitution give the court the power to hear issues? Oh, absolutely. Absolutely. So if there's an issue of equity between parties, why wouldn't this court, or I should say the trial court, we'll start there, have the right to hear it? Well, you know, if they didn't get it in Kankakee, they shouldn't get it here. I mean, you know, all I'm saying is just that. But that was a different case, though. We all agree. I just gave you an example that you hadn't even thought about, where I see that we may be dealing with a Kankakee. That's one part of it. And then the other part of it is that we know for sure that Kankakee was dealing with use taxes versus sales taxes. And with use taxes, there is sort of a distribution. There's not really reimbursement. I would suggest a ruling along those lines, Your Honor, would be making new law, and it's contrary to the legislative intent expressed in these statutes. That's my answer. You know, again, you're free to do whatever you choose to, but I've looked high and low for similar analogous types of circumstances where these sales tax refund cases are given equitable consideration in the circuit court. I have not found any. My question I wanted to ask you is, during this conversation, both argument, but it's been very much like a conversation, Mr. Passman and yourself have both talked about fault or how it happened. Nobody's being blamed. We don't know what the issues are. But for purposes of our decision making, that issue is off the table because you admit to the facts in the complaint for purposes of the affirmative defense. So, correct? We don't consider that. But even though we talked about it, I just want to make it clear that's not part of our analysis. I would submit that it's not. Thank you very much, Attorney Passman. Rebuttal? Thank you, Your Honor. I just want to make a couple of points, and kind of flowing nicely from the end of your discussion, Mr. Acker. Mr. Acker was asked, you know, why are there no other decisions about this? I may have the question wrong. He said, well, he surmised there were no other decisions following Kankakee in a case like this one because he said this is the law. I would submit, first, the six-month remedy statute, that predates Kankakee. It's been there for a lot longer. I would submit the reason why you don't have these cases is because municipalities are doing the right thing when they are facing the same circumstances. We know that there are errors that happen from time to time. It's human nature. The municipalities are working with their neighbors to sort it out. And so, I don't think you should read anything into that. But then you get to one of his other points. He said, well, you know, Raleigh-Meadows faces a significant legal issue. He says, acknowledge that, you know, if municipalities played games, prompted by Justice Walker's question, he said, well, it wouldn't feel right. But essentially, what the city is advancing is, well, this doesn't feel right, but we spent your money. That's not correct. I believe the reason you haven't seen this case is because municipalities that receive money that doesn't belong to them, upon realization, are working out with their neighbors, such that litigation is not necessary. Mr. Acker said, well, there's a shortcoming in the statutory scheme. That's only true if courts don't have jurisdiction to step in and use equitable jurisdiction to make the situation right. So, we only have a loophole. We only have a problem with how this certification and how these corrections are made if the courts can't do what courts do all the time. And the courts do it in every other context that I'm aware of, involving money being sent to the wrong place and the rightful owner asking for it back. So, I don't think there's a statutory problem here at all. To that point, there was discussion about this being the legislative scheme. It's important to note. I recognize what the court said in Kankakee. But there are not explicit statutes that cover any of this. There's no statute that says there's only six months, nothing more. There's no statute that says who has explicit jurisdiction or doesn't. The court in Kankakee read into a very different fact pattern as the court today has acknowledged and recognized and determined that for purposes of that case, that very complex case involving use taxes and sales taxes, that the court didn't have jurisdiction to work out the complexity of a result. None of those problems are present here. This is about identifying that nearly $1.2 million was sent to the wrong municipal hall and, hey, that's not yours. Send it back. So, to us, it gets to the inherent equity of the court. It avoids an absurd result. It avoids incentivizing gamesmanship and statutory noncompliance. Again, I think municipalities will have every reason not to do proper certifications under Section 811.16 of the Illinois Municipal Code. These are all reasons why the result that the trial court's opinion will foster is wrong, why this court should not uphold that opinion, rather reverse it, remand this case back for further consideration, because we are not under Kankakee. This is a simple case about conversion and unjust enrichment, and equity lies strongly in favor of Arlington Heights. We ask you to reverse and remand a case. Well, thank you very much. You have presented your respective cases excellently and given us quite a bit to consider. So, we have taken your arguments as well as the briefs under consideration, and thank you very much. Enjoy your holidays. Thanks to all three of you. Happy Thanksgiving.